UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

SHEN YI, LLC, a New Mexico Limited Liability Company, as Trustee of the 1970 Hidden Lake Dr I.V. Trust Under Agreement Dated August 25, 2011,

Plaintiff,

v.

DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee, in Trust for the Registered Holders of Morgan Stanley ABS Capital I Inc. Trust 2006-HE8, Mortgage Pass-Through Certificates, Series 2006-HE8,

Defendant.
_____/

CASE NO. 2:21-CV-00066-NPM

(formerly Hendry County Circuit Court Case No. 2020-CA-000336)

### DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION TO CONSOLIDATE SANCTIONS MOTIONS

Defendant hereby responds in opposition to the Motion to Consolidate Sanctions Motions, filed on May 28, 2021 by Lee Segal a/k/a Lior Segal ("Segal") and Segal & Schuh Law Group, P.L. (Doc. 44) ("Motion to Consolidate"), and says:

**I.   BACKGROUND**

This case is one of approximately eighty nearly identical lawsuits filed by Segal involving an egregious scam to obtain many tens of millions of dollars in default judgments by intentionally failing to serve the defendants with process, and by engaging in many other improper tactics, as detailed in Defendant's pending motion for sanctions (Doc. 32). Defendant refers to its prior briefing for a more complete background of the relevant facts and procedural events. *See* Doc. 17 (motion to quash

service and vacate default judgment); Doc. 32 (motion for sanctions and attorney's fees); Doc. 39 (opposition to motion to strike Defendant's motion for sanctions).

Segal's instant Motion to Consolidate is his latest attempt to try to avoid or delay having to address the merits of Defendant's motions for sanctions. *See, e.g.*, M.D. Fla. Case No. 8:21-cv-000626-SPF, Doc. 32 (Segal's amended motion to abate deadline to respond to defendant's motion for sanctions pending ruling on motion to consolidate). The Motion to Consolidate requests that this Court alone decide, within this case, *all* pending and future motions for sanctions filed in *other* cases, before *other* judges, in *other* divisions, and in *other* districts, based on conduct occurring in those *other* cases. To be clear, Segal is *not* requesting that those other cases be consolidated into this case for all purposes, which would require the other cases to first be transferred to this Court. That might be a reasonable request (and it is one that defendants have discussed with Segal in the past), but Segal adamantly opposes such consolidation. Instead, Segal is requesting that this Court somehow adjudicate specific, discrete motions that are pending, and yet to be filed, in countless other cases.

Needless to say, Segal's Motion to Consolidate is procedurally improper and must be denied. Segal should be well aware that his Motion cannot be granted, given that his nearly identical prior motion to consolidate was already denied by this Court, in Case No. 2:21-cv-9-SPC-NPM, Doc. 37 (Apr. 3, 2021) (the "*Kenny* Case"). In the *Kenny* Case, Segal sought to consolidate approximately two dozen of these cases only for purposes of appeal of an order quashing service and vacating defaults, even though

the cases were pending before different judges in different divisions and districts. *Id.*, Doc. 33; *see also id.*, Doc. 36 (defendant's opposition to Segal's motion to consolidate). In denying Segal's motion to consolidate in the *Kenny* Case, this Court explained:

> Kenny wants to consolidate a list of cases assigned to other judges, including many from other Divisions and Districts. Yet the Court does not have the power to simply pluck cases away from other federal judges around Florida. As Deutsche Bank notes, there is theoretically a process by which Kenny could try consolidating a bunch of cases across the State. But it is much more involved than this empty-handed request to a single judge.

*Id.*, Doc. 37 at p. 2.

And yet, Segal makes the same empty-handed request in this case. In fact, the request here is even more absurd. Segal is not asking this Court to simply pluck *cases* away from other judges for purposes of appeal, but rather, to pluck *individual motions* away from other judges. Although the defendants would very much like to streamline the resolution of these meritless and fraudulent cases, Segal's request for consolidation is improper and impractical. First and foremost, this Court lacks the authority to grant Segal's motion—*i.e.*, to simply adjudicate certain discrete motions filed in other lawsuits that are currently pending, and would remain pending, before other judges.

Moreover, there is nothing unusual, improper or inconsistent about each individual judge deciding whether to award defendants their attorney's fees and costs in each individual case, based on each judge's broad discretion and authority to address the conduct that occurs in their cases, based on the facts and issues before that court, and based on the particular motion and arguments that are made in each case.

3

But what would be highly unusual and improper would be for one judge to interfere in cases pending before other judges by somehow adjudicating individual motions filed in separate lawsuits pending before separate judges, based on litigation and conduct that occurred in those other cases before those other judges. Ironically, it would also be inefficient and lead to the possibility of inconsistent results, given that multiple judges would need to address many of the same issues in each case, and given that the litigants and attorneys would suddenly be required to start adjudicating certain individual motions before a different judge who is not currently familiar with the case.

Nor should this Court condone Segal's fraudulent scam by preventing other judges from considering and redressing, as *they* see fit, the misconduct that occurred within their own courtrooms, by allowing Segal to consolidate certain discrete issues when it suits *his* personal interests. Although Segal is engaging in a single, widespread scam to obtain default judgments, he is intentionally perpetrating his scam through many separate lawsuits that *he* chose to file across the entire state. Indeed, Segal is determined to continue litigating the service of process issue—the *only* issue that he is willing to litigate in these cases—in his eighty *separate* cases before many different *individual* judges, without any regard for judicial economy or the overlapping issues in these cases, because doing so makes it more likely that he might be able to maintain *some* of his improper default judgments. As a result, the defendants have been required to litigate the overlapping issues in these cases in eighty separate cases, greatly increasing the costs to defendants and the burden on the courts, and Segal is quite

QB\68763937.1

content with that result. But when it suits *his* interest, Segal moves to consolidate certain *specific* aspects of these cases, based on his hollow claim that consolidation would further judicial economy and avoid inconsistent results.

The reality is that Segal's scam has multiple victims—most notably, each defendant who is required to discover and defend against these individual lawsuits (on behalf of individual trusts). Each of those defendants should have the opportunity to move for sanctions to reimburse them for the damages they have individually incurred as a result of Segal's misconduct, including reimbursement of their attorney's fees in having to discover and defend against each case. So there is nothing unusual or surprising about the fact that the defendants in these cases have filed many similar motions to recover their attorney's fees and costs. But all of the motions are based on conduct that occurred in, and seek to recover fees and costs that were expended in, each particular lawsuit, even though much of the improper conduct occurred in nearly every one of these cases given that they are each nearly identical. Accordingly, Segal should be required to respond to each of the motions in each particular case, even if he chooses to file similar responses in each case. And likewise, each judge should maintain the authority to sanction the improper conduct that occurs within their cases.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 42(a), "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any

other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). "A district's court's decision under Rule 42(a) is purely discretionary." *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985). "In exercising its discretion, the court must determine:"

> Whether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Id.* (quoting *Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982). "When considering a motion to consolidate, the movant bears the burden of proof." *Pac-W. Distrib. NV LLC v. AFAB Indus. Serv., Inc.*, No. CV 19-3584, 2020 WL 4470447, at *9 (E.D. Pa. Aug. 4, 2020).

Local Rule 1.07(b) governs *consolidation*, and applies to cases assigned to *the same judge*:

> (b) CONSOLIDATION: If cases **assigned to a judge** present the probability of inefficiency or inconsistency, **a party may move to consolidate the actions**. The party must file the motion in one action and a notice and a copy of the motion in the other action. The judge can order the clerk to assign to the consolidated actions the magistrate judge assigned to the first-filed action.

*Id.* (emphases added).

Separately, Local Rule 1.07(a)(2)(B) governs the *transfer* of *actions*, and sets forth the procedure for transferring *an action* when multiple cases are pending before *different judges*:

6

**(a)(2)(B) By a Party:** If actions *before different judges* present the probability of inefficiency or inconsistency, *a party may move to transfer a later-filed action to the judge assigned to the first-filed action*. The moving party must file the motion in the later-filed action and a notice and a copy of the motion in the first-filed action. The proposed transferor judge must resolve the motion to transfer but can transfer the action only with the consent of the transferee judge. The transferee judge can order the clerk to assign to the later-filed action the magistrate judge in the first-filed action.

*Id.* (emphases added).

### III.   ARGUMENT

**A.   This Court lacks authority to "consolidate" individual motions for sanctions filed in other cases because Segal has failed to follow the proper procedure for transferring and consolidating cases.**

Segal's Motion to Consolidate requests that this Court divest every other federal judge of the authority to rule on all pending and future motions for sanctions and attorney's fees filed against Segal in similar lawsuits, and that this Court somehow adjudicate those individual motions filed in cases being handled by other judges.

As an initial matter, Segal's request is improper because it does not seek to consolidate these related actions, as the rules contemplate, but instead, to consolidate *one particular motion* filed (and to be filed) in innumerable separate actions. Segal provides no support for his unusual request. Segal's prior motion to consolidate was denied for this same threshold reason: "Kenny points to nothing suggesting a district court can decide to consolidate cases only for an interlocutory appeal." 2:21-cv-9-SPC-NPM, Doc. 37. Likewise, there is no basis to "consolidate" cases for the very limited purpose of deciding one particular motion filed in each separate lawsuit, especially

given that the motions for sanctions are merely collateral matters. *See* Docs. 32, 39. On this basis alone, Segal's motion must be denied.

Separately, even if Segal were asking to consolidate the entire actions—which he has intentionally chosen not to do—Segal has failed to follow the proper procedure for obtaining consolidation. Segal should be familiar with that procedure in light of the Court's Order in the *Kenny* Case, but as noted above and detailed in other briefing, Segal is determined to litigate these cases separately in the hope of maintaining *some* of his default judgments. In *Kenny*, this Court denied consolidation for the separate reason that the various cases were not assigned to the Court:

> Even if the Court could consolidate, it cannot do so with all these cases for a separate reason. This Court may consolidate certain cases before it. Fed. R. Civ. P. 42(a); Local Rule 1.07(b). But Kenny does not seek to only consolidate the cases assigned to the Court. Kenny wants to consolidate a list of cases assigned to other judges, including many from other Divisions and Districts. Yet the Court does not have the power to simply pluck cases away from other federal judges around Florida. As Deutsche Bank notes, there is theoretically a process by which Kenny could try consolidating a bunch of cases across the State. But it is much more involved than this empty-handed request to a single judge.

*Id.*, Doc. 37, page 2.

As in the *Kenny* Case, this Court does not have the authority to grant Segal the relief requested because he has failed to move to transfer the cases to this Court. To be clear, the motions for sanctions are pending before *other* judges, *other* divisions, and *other* districts, in federal (and state) courts throughout Florida. Segal lists eight motions

8

in Exhibit A to his Motion—which are pending before multiple judges and divisions—and he also asks the Court to "consolidate" (*i.e.*, adjudicate) any other similar motions, including ones that the defendants "may file in the future." Doc. 44, ¶ 17. If there were any doubt as to his intentions, in the other cases in which motions for sanctions are pending, Segal has been filing a "Notice of Filing Motion to Consolidate Related Cases for Purpose of Appeal [stet] and Amended Exhibit 'A' (amended to include additional cases)," in which Segal includes an "***Amended*** Exhibit 'A'" listing many additional cases beyond the initial eight. *See, e.g.*, M.D. Fla. Case No. 8:21-CV-00276-CEH-AAS, Doc. 34. Segal's recent "Amended Exhibit 'A'" spreadsheets list at least twice as many cases, including cases pending in *other* districts. *Id.* (listing 17 cases, including one case pending in the Northern District).

Segal's amended lists also randomly omit motions for sanctions and attorney's fees that have been pending against Segal for weeks, even though he is seeking to have this Court adjudicate those motions as well. For example, undersigned counsel filed a similar motion for sanctions and attorney's fees on May 14, 2021 in the Northern District, Case No. 1:21-CV-38 (Doc. 9), which is still pending, even though (so far) Segal has not been listing that particular case on his spreadsheets. Segal's motion is also unclear as to whether he is seeking to have this Court adjudicate the various motions for attorney's fees filed against Segal and his law firm based on *different* grounds. For example, unlike the motion for sanctions filed in this case, in Middle District Case No. 3:21-cv-341-TJC-MCR, the defendant filed a pending motion for

9

attorney's fees against both Segal and his client, the plaintiff, pursuant to Fla. Stat. § 57.105, on the basis that the claims are not supported by material facts or existing law (*id.* at Dkt. 10). That motion seeks largely the same result, but it is based on different grounds for imposing fees and seeks them against both Segal and his client.[1]

Regardless of the exact scope of the sanctions motions that this Court would be asked to adjudicate—which is inherently uncertain given that the request includes *all* motions for sanctions and fees that may be filed in the *future*—it is clear that Segal is improperly asking this Court to adjudicate many motions that are not pending before *this* Court. As explained in the *Kenny* Case, the proper procedure would be to first move to transfer the cases to one court—namely, the first filed action, *which is not this case*. Then, *that* court could properly consider a motion to consolidate and address the necessary issues, including the procedural postures of the cases, to determine whether to consolidate some or all of the cases before it and to what extent, including whether to consolidate for discovery and motion practice only, for trial only, or for all purposes.

But as things stand, consolidation is plainly improper, as this Court's local rules and precedent clearly establish: "Consolidation occurs only if the related actions pend before the same judge… If the related actions pend before different judges, a party seeking consolidation must first move to transfer …." *Maryland Cas. Co. v. Superior*

---

[1] The defendants in these cases have also moved for attorney's fees against Segal and his law firm in state court. *See e.g.,* Hardee County Case No. 20-CA-000292; Orange County Case No. 20-CA-003153. Although Segal does not suggest that this Court could somehow adjudicate those motions as well, it is worth noting that, under no circumstance, would it be possible for a single court to adjudicate all of these motions.

*Pharmacy LLC*, No. 8:14-CV-375-T-23TBM, 2014 WL 12708718, at *1 (M.D. Fla. May 14, 2014); Local Rule 1.07; *Kenny* Case, 2:21-cv-9-SPC-NPM, Doc. 37.

  **B.** **Segal's stated grounds and reasons for consolidation are not accurate or persuasive, as courts have wide discretion and authority to determine whether to award sanctions and attorney's fees, each judge should make that determination based on the individual cases and conduct before them, and the type of piecemeal "consolidation" that Segal requests would not further judicial economy.**

The timing of Segal's Motion to Consolidate, and the extremely narrow scope of his motion—limited solely to motions for sanctions filed against him personally—reveal that this motion is a continuation of Segal's unprofessional gamesmanship, and not made out of any genuine concern about judicial economy or consistent results. *See* Case No. 5:21-cv-54, Doc. 25 (N.D. Fla. Mar. 29, 2021) ("Indeed, it appears that the location of the filing and the manner of service in this case were intended to ensure that Defendant would not get notice of this case, and in that regard, the actions of Plaintiff's counsel in this case have the same 'stink of fraud-upon-the-court' (or at least unprofessional gamesmanship) as his actions in Kenny v. Deutsche Bank Nat. Trust Co., 2021 WL 778877, at *4 (M.D. Fla. Mar. 1, 2021).").

  **1.** **Consolidation is not necessary to ensure consistent rulings.**

First, Segal argues that consolidation "is necessary to prevent inconsistent rulings on the same facts." Doc. 44, ¶ 15. But there is nothing improper whatsoever about each judge determining whether sanctions are appropriate in each case. In fact, district courts have "broad discretion about whether to impose sanctions." *Peer v. Lewis*, 571 Fed. Appx. 840, 843 (11th Cir. 2014). Therefore, it is necessary for each

judge to exercise his or her own discretion in each case in determining whether to impose sanctions, regardless of whether the case presents similar or different facts as another case, although obviously judges can, and likely will, find decisions from other cases persuasive. As a result, it would not be unusual or improper at all for different judges to come to different results on these motions for sanctions.

In fact, even assuming these cases were consolidated before a single judge, it would still be possible for that judge to decide some of the motions for sanctions differently given that the cases present different variations and issues in the underlying facts and procedural postures. For example, many of these lawsuits are repeat filings based on the same complaint, some involve prior settlement agreements between the parties releasing the claims stated in the complaints (including some settlement agreements signed by Segal), and some involve prior foreclosure judgments while others do not. Even as to the primary issue in dispute in these cases—service of process—these cases were filed against two *different* financial institutions, and Segal's arguments and theories as to service on each financial institution is different. Likewise, as to the procedural postures, some of these cases resulted in default judgments, others only resulted in clerk's defaults, and others were discovered before any default was entered, while some of the cases involve complaints that have been dismissed voluntarily, while others were dismissed involuntarily. For example, in Middle District Case No. 8:21-cv-00624-WFJ-AEP, the Court dismissed the complaint for multiple reasons—not only for failure to state a claim, but also due to Segal's "willful

defiance of the undersigned's direct Order." *Id.*, Doc. 60. The Court in that case subsequently ordered Segal to respond to the defendant's motion for sanctions under oath (*id.*, Doc. 63), which likely explains why Segal now wants this Court to somehow pluck that motion away from the judge overseeing that case. Indeed, in this case, Segal is currently defending the motion for sanction on the ground that it is purportedly untimely because it was filed post-dismissal (Doc. 34), which is an argument that is not available in most cases. Similarly, as noted above, some of the motions for sanctions involve entirely different grounds for relief.

Having said that, there are many consistent aspects in these cases, which is why the motions for sanctions contain much of the same content. Due to the overlapping issues, Defendant's position is that sanctions are proper in every one of these cases, given that Segal engaged in sanctionable conduct in *every* case. For example, in this case, *just like in nearly every one of these cases*, Segal (1) filed a complaint containing frivolous claims, (2) for the sole purpose of trying to obtain a default judgment, (3) in a county that has no connection to the claims based on false allegations as to where the claims accrued, (4) delivered the summons and complaint to CT Corp knowing that Defendant would not receive any notice of the lawsuit, (5) personally received a rejection letter from CT Corp that he intentionally failed to disclose to the court, (6) made no further effort whatsoever to serve the Defendant with process, (7) misrepresented to the court that Defendant had been personally served while knowing that Defendant had not received any notice of the case, (8) sought, and often obtained,

QB\68763937.1

a large default judgment (in this case, for $858,907.50), despite the defective service, despite the absence of any viable claims or damages, and without the requisite evidentiary hearing, (9) refused to vacate the default judgment after Defendant independently discovered the lawsuit, thereby requiring extensive unnecessary litigation, and (10) refused to litigate the case on the merits, and indeed, eventually dismissed or abandoned the case altogether. *See* Doc. 17 (motion to quash service and vacate default judgment); Doc. 32 (motion for sanctions). These types of facts should be enough, on their own, to result in sanctions and attorney's fees in every case.

Therefore, the rulings on the motions for sanctions and attorney's fees in these cases may vary for a variety of reasons, as courts have wide discretion to award sanctions and there are many unique aspects to these cases that may be taken into consideration, despite their similarities. In fact, the desire to achieve consistent rulings seems to weigh *against* consolidation—at least the "consolidation" proposed by Segal—because two different judges would be analyzing many of the same underlying issues in each case. For example, if this piecemeal consolidation were permitted, then this Court might rule that sanctions are appropriate in a particular case based on Segal's improper scheme to obtain a default judgment based on defective service, while the other judge who is actually presiding over the case might rule that the plaintiff had met its burden of proving that service was valid. That would also be inefficient because both judges would have to analyze many of the same underlying issues in each case, including service of proper. The real possibility of these types of situations resulting in

inconsistent rulings and inefficiencies militates against consolidation of the sanctions motions and toward continuing to allow each judge to handle all aspects of the cases before them, including the individual sanctions motions.

>    **2.      Consolidation is not necessary to ensure Segal is not punished multiple times for the same conduct in other cases.**

Second, Segal argues that consolidation "is necessary to ensure Segal and [his firm] are not punished for the same conduct twice." Doc. 44, ¶ 15. However, Segal *should* be sanctioned in every one of these cases—*i.e.*, approximately eighty times, not just twice—regardless of whether the motions are consolidated, *because Segal engaged in sanctionable conduct in every case, and caused each defendant to spend attorney's fees and costs defending every individual case*.

Segal's argument that multiple "punishments" would somehow be improper is based on the incorrect premise that the "basis of the Motion is not conduct alleged to have been committed in this case, but conduct attributed to Segal and [his firm] in *other* cases." *Id.*, ¶ 2. It is true that the motion for sanctions describes the entirety of Segal's scam (or at least a large portion of it), because the courts can, and should, consider the entirety of Segal's conduct in determining the appropriateness of sanctions, including his conduct in the other, related cases. Indeed, Defendant's motion specifically argues that "[t]he Court should consider the entirety of Segal's conduct in determining the appropriateness of sanctions," citing several binding cases in support. Doc. 32, at 2; *see, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 57 (1991) ("the party may be sanctioned for abuses of process occurring beyond the courtroom").

But as the motion for sanctions also argues, the sanctionable conduct described in the motion that forms the basis for Segal's scam *occurred in this case*, and therefore sanctions are appropriate *in this case*. Segal is certainly free to argue in his response to the motion for sanctions that Defendant is incorrect and that the Court may not consider the entirety of Segal's conduct, and instead, that the Court may only consider conduct that occurred within each particular lawsuit. But if that were a viable argument, then it would be a basis for opposing the motions for sanctions *on their merits, irrespective of whether the motions were consolidated*. If anything, that argument would seem to weigh *against* consolidation, given that each motion would need to be decided based on the specific conduct in that case, so there would be little if any advantage to consolidation.

Notably, the *only* example that Segal can cite to in support of his argument that Defendant is moving for sanctions based on conduct that occurred in *other* cases is a short section (one and a half pages) in Defendant's motion discussing Segal's "test cases." Doc. 44, ¶¶ 6-8. However, unlike *every* other argument section of Defendant's motion for sanctions, that section does not argue that sanctions should be entered on that basis, or cite to any legal authority. *See* Doc. 32 at 5-6. Every other section discusses this particular case, argues that sanctions should be entered for Segal's conduct in this case, and cites to legal authorities in support. In contrast, the "test case" section, which is limited to certain other cases, was included because the test cases are a part of Segal's overall scam, and they explain why these cases were filed and pursued

against these two particular defendants (and not other foreclosure plaintiffs)—*i.e.*, for the sole purpose of obtaining default judgments. Ultimately, consolidation would have no impact on whether sanctions are awarded based on Segal's conduct in filing the test cases. If Defendant's argument is correct—that filing the "test cases" was part of Segal's scam, and that this Court should consider the entirety of Segal's scam—then that factor will be considered regardless of whether the cases are consolidated. Likewise, if Segal can establish that his test cases should be disregarded, then that factor will not be considered regardless of whether the cases are consolidated. Either way, these are arguments directed to the merits, and not arguments for consolidation.

### 3. The consolidation sought would not further judicial economy.

Third, Segal argues that "interests of judicial economy are served by these motions being resolved by the same judge." Doc. 44, ¶ 15. Defendant agrees that consolidation *of these cases* could promote judicial economy, and has never been opposed to consolidation where feasible and appropriate. But again, Segal is not seeking to consolidate these cases. Instead, he is asking this Court to adjudicate only specific motions pending in other cases based on conduct occurring in those separate cases before separate judges.

As an initial matter, even if consolidation were somehow feasible, Segal's claim that it would promote judicial economy is hollow because he has not explained how the individual motions for sanctions could or would be decided by this Court. For example, Segal does not address whether the defendants and their respective attorneys

would need to re-file their motions for sanctions in one consolidated brief before this Court, so that Segal could respond in one consolidated opposition brief, but presumably that is what Segal is suggesting. If that occurred, the defendants would need to be able to seek their attorney's fees and costs that they incurred in *all of these cases*, and not just in the cases in which they have already filed a motion for sanctions. Otherwise, the Court's consolidation order would seem to create the perverse requirement that the defendants would need to first file some sort of notice or motion in each individual case before they would become eligible to recover their fees for that particular case (through their consolidated motion in this case). Obviously, the only reasonable result of consolidation—of either the entire cases or just the sanctions issues—would be to allow the defendants to seek their attorney's fees and costs incurred in all of these cases in one consolidated motion, although it is very likely Segal would oppose that result as well.

Requiring all of the pending motions to be consolidated into one motion would also lead to considerable inefficiencies, delays and prejudice, as well as mounting costs to defendants, given that the defendants' various attorneys would need to draft and re-file one consolidated motion, on behalf of multiple defendants, based on conduct that occurred in dozens of separate cases. That would significantly delay and hinder the defendants' ability to recover their attorney's fees and costs, and to discover the remaining unknown cases. At a minimum, the Court should promptly order Segal to disclose his remaining secret lawsuits, which he is still refusing to do (presumably to

18

maintain his ability to execute upon void judgments, and/or in the hope that they will become more difficult for defendants to vacate after one year passes).

And then, in order to properly adjudicate any consolidated motion for sanctions, this Court would need to become familiar with countless individual cases assigned to other judges, including the specific facts and procedural posture of those cases. Presumably it would also need to adopt each judge's findings on the underlying issues in determining whether this Court believes that sanctions are appropriate based on the conduct that occurred before those other judges in those other cases. That would not be efficient at all. Instead, the most efficient result would be to allow the judges who are already familiar with their cases to decide the motions before them.

Ultimately, there is no need for this Court to address these policy issues, such as whether consolidation might promote judicial economy, because the type of piecemeal "consolidation" proposed by Segal is improper. Courts and litigants are not free to invent their own rules and procedures on an *ad hoc* basis. This Court is bound by actual rules and procedures, which prevent this Court from adjudicating motions pending in cases before other judges, in other divisions, and in other districts, as the Motion to Consolidate requests.

This Court should deny the Motion to Consolidate without further delay. Defendant's motion for sanctions has been pending for nearly two months, with no response, and it is based on public court filings made by Segal personally. Segal has no legitimate excuse for any further delay, which is exactly what his Motion to

Consolidate seeks to achieve. To be clear, Segal is under a current deadline to file his response to Defendant's motion for sanctions in this case by June 15, 2021 (Doc. 43), but he will likely seek further delay based on this empty-handed motion. Segal should be required to promptly respond to Defendant's motion for sanctions on the merits, which, unlike consolidation of all sanctions motions, would provide the most just and efficient resolution of this matter.

QUARLES & BRADY LLP

By: /s/ Joseph T. Kohn
   Joseph T. Kohn
   Florida Bar No. 113869
   Benjamin B. Brown
   Florida Bar No. 13290
   Gabriela N. Timis
   Florida Bar No. 1025730
   1395 Panther Lane, Suite 300
   Naples, FL 34109
   239/659-5026 Telephone
   joseph.kohn@quarles.com
   benjamin.brown@quarles.com
   gabriela.timis@quarles.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was filed on June 11, 2021, using the CM/ECF e-filing system, which will send an electronic copy to all counsel of record.

/s/ Joseph T. Kohn
Joseph T. Kohn

QB\68763937.1