UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SHEN YI, LLC,

    Plaintiff,

v.                                     Case No. 2:21-cv-66-NPM

DEUTSCHE BANK NATIONAL
TRUST COMPANY,

    Defendant.

**OPINION AND ORDER**

This matter comes before the Court on the Motion for Sanctions and Attorney's Fees (Doc. 32) and Response (Doc. 55). Also before the Court is the Motion to Strike Motion for Sanctions (Doc. 34) and Response (Doc.39). Finally, Deutsche Bank National Trust Company, as Trustee ("DBNT") filed two Requests for Judicial Notice (Docs. 33, 37). The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 24).

DBNT seeks sanctions and attorney's fees against attorney Lee Segal a/ka Lior Segal ("Segal") and Segal & Schuh Law Group, P.L. ("Segal & Schuh"). Segal and Segal & Schuh seek to strike the Motion for Sanctions and Attorney's Fees (Doc. 32) as untimely. The Court prefers to handle the Motion for Sanctions on the merits and therefore denies as moot the Motion to Strike.

I.      **Background and Procedural History**

This is one of many – potentially eighty – virtually similar complaints filed in state courts throughout Florida against DBNT by Shen Yi, LLC's attorney Lee Segal and Segal & Schuh Law Group, P.L. ("Segal & Schuh") and a few other firms. For the purpose of clarity, the Court will summarize the history of the state-court proceedings in this case.

This action stems from a state-court foreclosure action on the real property at issue, 1970 Hidden Lake Drive, Palm Harbor, Florida 34683, located in Pinellas County, Florida. (Doc. 17, p. 8). Shen Yi had obtained an ownership interest in the property by acquiring it for negligible consideration and, as a result, was named as a defendant in that foreclosure action. (Doc. 17, p. 8). The property was sold at a judicial sale, DBNT purchased the property, and Shen Yi's interest in the property was foreclosed. (Doc. 4, p. 5-6). Even though the property was located in Pinellas County, Shen Yi filed a separate action on August 20, 2020, in Hendry County, Florida, contesting the foreclosure action. (Doc. 17. p. 9).

In short, Shen Yi claims DBNT's prosecution of the underlying foreclosure action was "fraudulent, illegal, and perjurious." (Doc. 3, p. 4). First, Shen Yi claims DBNT was not the owner or holder of the note when it sought to foreclose on the note and mortgage. (Doc. 3, p. 5). Second, the parties in whose name the suit was prosecuted—the certificate holders—never authorized the lawsuit. (Doc. 3, p. 5).

And third, Shen Yi asserts DBNT purported to prosecute the underlying foreclosure action as Trustee, but its trust license had been revoked. (Doc. 3, p. 5). Thus, Shen Yi brought a one-count complaint, alleging: a violation of Fla. Stat. § 772.101 and violations of Fla. Stat. §§ 817.535 and 772.103(1)-(4)[1]; a pattern of criminal activity; the improper recording of a notice of lis pendens; numerous fraudulent representations in the underlying lawsuit; and conspiracy with others to commit these alleged unlawful actions. (Doc. 3, p. 10-11).

    Shen Yi obtained a default and a default judgment against DBNT. (Doc. 17, p. 10). Shen Yi then obtained a Final Judgment After Default and an Amended Final Judgment After Default. (Doc. 17, p. 10-11). Shen Yi also moved for attorney's fees and costs. (Doc. 17, p. 11). After learning about the lawsuit and immediately prior to removal, DBNT filed a Motion to Quash Service of Process, Motion to Vacate Clerk's Default and Default Final Judgment, and Motion to Transfer Venue (Doc. 4). In the Motion to Quash Service of Process, DBNT claimed that Shen Yi improperly served process by, among other things, serving it on CT Corp., which is not DBNT's registered agent, and also claimed Shen Yi named the party incorrectly. (Doc. 4, p. 7-8, 10-13). DBNT further claimed that after CT Corp. received the summons and complaint, it notified Segal that it was not the registered agent for

---

[1] The Complaint incorrectly cites Fla. Stat. §§ 772.013(1)-(4). (Doc. 3, p. 10).

DBNT and was unable to forward the service documents. (Doc. 4, p. 2). DBNT then removed the action to this Court on January 26, 2021. (Doc. 1).

After removal, the Court denied the Motion to Quash Service of Process, Motion to Vacate Clerk's Default and Default Final Judgment, and Motion to Transfer Venue without prejudice, directing DBNT to comply with new Local Rule 1.06(c). (Doc. 10). On February 22, 2021, DBNT refiled its Motion to Quash Service of Process and Set Aside Clerk's Default and Default Judgment (Doc. 17). Segal requested and was granted an extension of time to respond to the Motion. (Docs. 26, 27).

Rather than responding to the motion, Segal filed a Notice of Voluntary Dismissal (Doc. 28) on April 5, 2021. The next day, the parties filed a Stipulation Vacating Default Final Judgment and Dismissing Case With Prejudice. (Doc. 29). In the stipulation, the parties agreed to withdraw and vacate the Notice of Voluntary Dismissal, vacate the Final Judgment After Default entered in state court, vacate the Amended Final Judgment After Default entered in state court, discharge any liens or encumbrances, and dismiss this action with prejudice. (Doc. 29, p. 1-2). No mention was made of attorney's fees. The Court fully approved and adopted the stipulation the next day and judgment was entered on April 7, 2021. (Docs. 30, 31). Fourteen days later, DBNT filed the instant Motion for Sanctions and Attorney's Fees (Doc. 32).

## II.     Motion for Attorney's Fees and Sanctions (Doc. 32)

DBNT seeks to recover attorney's fees, costs, additional sanctions, and a disclosure of all known lawsuits against it and Bank of New York Mellon ("BNYM") (a non-party to this action) from Segal and Segal & Schuh under both 28 U.S.C. § 1927 and the Court's inherent authority. (Do. 32, p. 24). In sum, DBNT asserts that the Segal and Segal & Schuh's sanctionable conduct was comprised of:

(1)     filing certain test cases in state court from December 2019 to July 2020, testing the waters to find which financial institutions would not respond to the lawsuits, and Segal would then be able to obtain quick defaults and default judgments, (Doc. 32, p. 5-6);

(2)     knowingly and improperly serving DBNT and BNYM in the state court actions, by improperly serving CT Corp, which was neither financial institutions' registered agent, improperly filing certificates of service, and never giving notice to DBNT or BNYM of any filings (Doc. 32, p. 7-9, 21-23);

(3)     filing cases in state court in counties where Segal knew that venue was improper because the property was not located there and the foreclosure action did not occur there (Doc. 32, p. 10-12);

5

(4)  multiplying the proceedings by voluntarily dismissing the cases when a defendant appeared and then refiling similar complaints in other state-court venues, (Doc. 32, p. 12-15); and

(5)  filing frivolous complaints in state court in bad faith to vexatiously multiply the proceedings in state court by filing motions for summary judgment, improper affidavits, motions for default, and motions for default judgment, (Doc. 32, p. 15-21).

In this case and from a review of the alleged sanctionable activity, a few patterns emerged. First, most if not all of the allegedly sanctionable activity occurred in state court before removal. Second, DBNT chose to remove these actions, bringing them to federal court. And third, based on the original Motion to Quash Service of Process and Vacate Clerk's Default and Default Final Judgment (Doc. 4) filed originally in state court in the instant action, DBNT was aware of at least some of the alleged sanctionable activity at the time of removal. (Doc. 4, p. 2-9).

### A.   28 U.S.C. § 1927

Under 28 U.S.C. § 1927, a court may sanction: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Attorneys are obligated not to

delay judicial proceedings intentionally and unnecessarily and must avoid dilatory tactics during litigation or be subject to possible sanctions. *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010). Because this provision is penal in nature, it must be strictly construed. *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1281 (11th Cir. 2010).

Under the plain language of the statute, three requirements must be met in order to justify imposing sanctions:

(1) an attorney must engage in "unreasonable and vexatious" conduct;

(2) such "unreasonable and vexatious" conduct must "multipl[y] the proceedings;" and

(3) the amount of sanctions cannot exceed the costs occasioned by the objectionable conduct.

*Id.* An attorney multiplies proceedings "unreasonably and vexatiously" when the attorney's conduct is so egregious that it is "'tantamount to bad faith.'" *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007) (citation omitted). Bad faith "turns not on the attorney's subjective intent, but on the attorney's objective conduct." *Id.* Basically, a court must compare the attorney's conduct against the conduct of a "reasonable" attorney and make a judgment as to whether the conduct was acceptable based on an objective standard. *Id.* at 1239-40. Likewise, the term "vexatious" requires an evaluation of an attorney's objective

conduct. *Id.* at 1240. Thus, objectively reckless conduct is sufficient to warrant sanctions even if an attorney does not act knowingly or malevolently. *Id*. at 1241.

Even so, an attorney's purpose or intent may be "an important piece of the calculus," "because a given act is more likely to fall outside the bounds of acceptable conduct and therefore be 'unreasonabl[e] and vexatious[ ]' if it is done with a malicious purpose or intent." *Id.* And to be clear, neither negligent conduct alone nor a lack of merit will support a finding of bad faith under § 1927. *Id.* at 1241-42. Importantly, the language of § 1927 applies to unnecessary filings after the lawsuit has begun. *Macort v. Prem, Inc.*, 208 F. App'x 781, 786 (11th Cir. 2006).

The plain language of § 1927 applies to multiplying proceedings vexatiously and unreasonably before a federal court and thus § 1927 applies to filings after a lawsuit has begun in this court. *Id.*; *see also Smith v. Psychiatric Sols., Inc.*, 864 F. Supp. 2d 1241, 1269 (N.D. Fla. 2012), *aff'd*, 750 F.3d 1253 (11th Cir. 2014) (finding counsel cannot "be sanctioned for conduct committed in the state court proceedings, including the filing of the initial complaint and any subsequent events in that forum."); *Granite Rock Co. v. Int'l Bhd. of Teamsters*, No. C 10-03718 JW, 2011 WL 13373980, at *3 (N.D. Cal. Mar. 17, 2011) (finding conduct that occurred while pending in state court prior to removal not sanctionable under § 1927). In this case, the alleged unreasonable and vexatious conduct occurred while this case was pending in state court, prior to removal. DBNT complains of a frivolous complaint,

8

improper service, improper filings to obtain a default and default judgment, multiple filings in other state courts, and other similar behavior that all occurred before a state court.

To award sanctions under § 1927, the Court focuses on Segal's actions after removal. After removal, the Court denied the first Motion to Quash Service of Process without prejudice, and then DBNT filed its second Motion to Quash Service and Motion to Vacate Clerk's Default and Default Judgment (Doc. 17). Before the Court ruled on that Motion, Segal filed a Notice of Voluntary Dismissal (Doc. 28) and then the next day, the parties filed a Stipulation Vacating Default Final Judgment and Dismissing the Case with Prejudice, which the Court adopted. (*See* Docs. 29, 30). Nothing in the case before the federal court after removal amounts to multiplying the action, let alone multiplying it unreasonably or vexatiously. In sum, rather than respond to the Motion to Quash, Segal decided to voluntarily dismiss the action and end this litigation. As a result, Segal's actions while in federal court do not amount to multiplying this action unreasonably and vexatiously. DBNT has not met the requirements for sanctions under 28 U.S.C. § 1927 and therefore the Court finds no basis to award attorney's fees or sanctions under this provision.

### B.     The Court's Inherent Authority

"Federal courts possess potent inherent powers that they may use to 'fashion an appropriate sanction for conduct which abuses the judicial process.'" *Peer v.*

*Lewis*, 571 F. App'x 840, 844 (11th Cir. 2014) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). One purpose of the court's inherent power is to police those who appear before them. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (citing *Chambers*, 501 U.S. at 46). Even if procedural rules exist to sanction conduct, a court may invoke its inherent authority to sanction the same conduct. *Peer*, 571 F. App'x at 844. A court's inherent authority extends to a full range of litigation abuses and fills in the gaps left by rule-based sanctions. *Id.*

A court may exercise its power to sanction for willful disobedience of a court order, and to sanction a party who acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Purchasing Power, LLC*, 851 F.3d at 1223 (citing *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013); *Chambers*, 501 U.S. at 45-46). Importantly, "[t]his power 'must be exercised with restraint and discretion' and used 'to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Id.* (quoting *Chambers*, 501 U.S. at 45-46). To unlock a court's inherent power, a court must find bad faith. *Id.*; *see also Peer v. Lewis*, 606 F.3d 1306, 1316 (11th Cir. 2010).

Unlike sanctions under 28 U.S.C. § 1927, the standard governing a court's inherent power is a "subjective standard with a narrow exception for conduct tantamount to bad faith. Furthermore, recklessness alone does not constitute conduct

10

tantamount to bad faith." *Purchasing Power, LLC*, 851 F.3d at 1223-24. "However, in the absence of direct evidence of subjective bad faith, this standard can be met if an attorney's conduct is so egregious that it could only be committed in bad faith." *Id.* at 1224-25. In short, to establish sanctions under a court's inherent power, recklessness plus a frivolous argument will suffice. *Id.* at 1225.

      The Court has the inherent authority to sanction a party or attorney for abuses of process that occur beyond the courtroom, such as disobeying court orders. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 57 (1991). In *Chambers v. Nasco, Inc.* for example, the Supreme Court determined that when Plaintiff attempted to gain FCC's permission to build a new transmission tower in direct contravention of a district court's order to maintain the status quo pending the outcome of the litigation, this conduct fell within the scope of the district court's sanctioning power. 501 U.S. at 57. In *Chambers*, the plaintiff disobeyed a district court's order in another unrelated proceeding and the Supreme Court found sanctions warranted.

      In this case, the alleged sanctionable conduct occurred while this case was pending in state court and prior to removal. Similarly, in the other state-court cases mentioned by DBNT that were removed to this Court – much if not all of the alleged sanctionable conduct occurred before state-court judges. The Court declines to sanction Segal and Segal & Schuh for their conduct here.

In summary, DBNT chose to remove this action to federal court and now requests that Segal and Segal & Schuh be sanctioned for conduct that occurred in state court that included: filing test cases in state court, knowingly improperly serving DBNT and BNYM (a non-party to this action), knowingly filing cases in improper venues, multiplying the proceedings by voluntarily dismissing cases and refiling them in different state-court venues, and filing frivolous complaints, motions for summary judgment, defaults, and default judgments all in state court. After removal in January 2021, Plaintiff filed a Notice of Voluntary Dismissal in April 2021, less than three months after removal. And as explained above, very little occurred in the instant case prior to the case closing. Indeed, the Court finds no bad faith, vexatious, wanton, or oppressive behavior in the action after removal. The Court is mindful that it must exercise restraint and discretion when awarding sanctions under its inherent authority. While the Court certainly does not condone the arguably contumacious behavior of Segal and Segal & Schuh in filing so many state-court actions and in how Segal conducted those proceedings, in its discretion, the Court will not exercise its inherent powers to sanction Segal and Segal & Schuh in this action for conduct that did not occur before it.

### III. Judicial Notice

Also pending before the Court are DBNT's requests for Judicial Notice (Docs. 33, 37). DBNT requests that the Court take judicial notice of summaries of certain

state and federal court cases and of filings in two cases against BNYM filed by Kenneth and Kristine Kaye. (Doc. 33, p. 2-4; Doc. 37, p. 2-4). Under Federal Rule of Evidence 201(b)(2), the types of facts that may be judicially noticed are facts that are not subject to reasonable dispute because they: "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The requests do not satisfy the requirements of judicial notice and, based on this Court's ruling, the requests are moot and not necessary for ruling in this case.

Accordingly, it is hereby **ORDERED**:

(1)  The Motion to Strike Motion for Sanctions (Doc. 34) is **DENIED as moot**.

(2)  The Motion for Sanctions and Attorney's Fees (Doc. 32) is **DENIED**.

(3)  The Requests for Judicial Notice (Docs. 33, 37) are **MOOT**.

**DONE** and **ORDERED** in Fort Myers, Florida on January 28, 2022.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties